STATE ex rel. GILL, Attorney General, vs. THE BOARD OF SU-
    PERVISORS OF MILWAUKEE COUNTY.

*" Local office"— County supervisor ceasing to be a resident of his district, by change of
    boundaries.*

By the apportionment of 1860, the boundaries of an assembly district were so
    changed that the person previously elected in such district as a member of the
    county board of supervisors ceased to be a resident thereof. *Held*, that he did
    not thereby lose his office of supervisor. DOWNER, J., dissents.

APPLICATION for a *Mandamus*.

Chapter 129, Laws of 1861, provided that in counties con-
taining three or more assembly districts, there should be elect-
ed one member of the county board of supervisors in each as
sembly district, and that when there was an even number of
such districts, exceeding three, an additional supervisor for the
county at large should be elected ; that they should be elected
at the general election in November of each alternate year, and
should hold for the term of two years ; and that the first elec-
tion under the act should be in November of that year.

Under ch. 216, Laws of 1861, Milwaukee county was appor-
tioned into *nine* assembly districts, the towns of Milwaukee
and Granville constituting the seventh ; those of Greenfield
and Wauwatosa, the eighth ; and those of Lake, Oak Creek
and Franklin, the ninth.

Ch. 75, Laws of 1865, provided that at the general election
in November of that year, supervisors representing the even
numbered districts, together with supervisors at large, should
" be elected for the term of two years," and supervisors repre-
senting the odd numbered districts should be elected " for the
term of one year."

Under ch. 101, Laws of 1866 (which took effect in April of
that year), Milwaukee county was apportioned into *ten* assem-
bly districts, of which the ninth ward of the city of Milwau-

kee constituted the eighth; the towns of Lake, Oak Creek, Franklin and Greenfield, the ninth; and those of Wauwatosa, Milwaukee and Granville, the tenth.

Section 2, ch. 14, R. S., declares that "every office shall become vacant on the happening of either of the following events before the expiration of the term of such office:   *   *   *   *   *   4. His [the incumbent's] ceasing to be an inhabitant of this state, or, if the office be local, his ceasing to be an inhabitant of the district, county, town, city or village for which he shall have been elected or appointed, or within which the duties of his office are required to be discharged."

The petition of the attorney general in this cause states, that at the general election in November, 1865, Patrick Walsh was elected from the *eighth* assembly district of said county to be a member of the county board of supervisors, for a term of two years, commencing on the first Monday of January, 1866; that he duly qualified and entered upon the duties of the office, and continued to act as a member of the board until the first Monday of January, 1867; but that ever since that day, the board had denied his right to act as a member thereof, and refused to allow him to vote, &c. Prayer, for a writ of *mandamus*, commanding the board to permit Walsh to sit, vote, and in all respects act as a member thereof.

The respondent moved to quash the alternative writ, on the grounds that it did not state facts showing that Walsh was entitled to relief, and that the attorney general was not a proper party as relator.

It was stipulated, 1. That Mr. Walsh was at the time of his election, and ever since had been, a resident of the town of Greenfield. 2. That at the general election in November, 1866, a supervisor was elected for each of the ninth and tenth districts of said county, and one for the county at large, all of whom had qualified, and were acting as members of the county board by virtue of such election.

*C. K. Martin,* respondent's attorney, with *S. U. Pinney,* of counsel, for the motion, argued that Walsh could not claim to represent the present *eighth* district, not being and never having been a resident of it. (2.) That under ch. 75, Laws of 1865, supervisors from the odd numbered districts were to hold their office only one year; that the term of office of the supervisor elected in 1865 from the *ninth* district, to which the town of Greenfield was afterwards added, expired January 1, 1867, and a successor was elected, as the law required, in November, 1866. Mr. Walsh cannot therefore represent that district. (3.) The present *tenth* district consists of the old *seventh,* with the town of Wauwatosa added. Mr. Walsh cannot claim to represent that district, because he was never a resident of it, either as formerly or as now constituted. Counsel further cited R. S., ch. 14, sec. 2, subd. 4; Laws of 1862, ch. 399, sec. 5; *State v. Messmore,* 14 Wis., 163; 11 Ohio, 511. 2. The constitutional power of the legislature to deprive Walsh of the office of supervisor of the eighth district, by adding the territory of which it was composed to other districts, cannot be successfully controverted, the tenure of that office not being fixed or secured by the constitution. *People v. Morrill,* 21 Wend., 563; *Conner v. The Mayor,* 1 Seld., 285. Either by virtue of an exercise of this power, or by reason of his having ceased to be an inhabitant of his district, if it still remains in existence, Mr. Walsh has been legally deprived of his right to act as a member of the board.

*The Attorney General, contra.*

DIXON, C. J. The most material question, as it seems to me, and that on which all others turn in this application, is, whether the office of a member of the county board of supervisors, elected for a district, is a local office in the sense that the incumbent must reside in the district and continue to reside there until the end of his term, or forfeit his office. This

is a question on which we may reasonably expect considerable difference of opinion, and on which too, unfortunately, no light can be thrown by the examination of authorities. So far as the question depends on the statute, that may almost be said to be silent. It contains no express provision, but is claimed for the respondents to require a residence in the district by implication. On the other hand, the attorney general insists that it is not a local office in the sense above stated. I am inclined to agree with him. The implication that the supervisor must reside in the district, derived from the words "to be elected in and for each of the supervisor districts," seems to be too far fetched. It is by no means a necessary inference from these words, that the person elected should be a resident of the district. The act of electing must be performed *in* the district by the qualified voters, and the person so elected is the supervisor for the district; but does this imply that he must reside within it? Of necessity, I think not. Suppose the legislature had seen fit to prescribe specifically the qualifications of county supervisors, and among others had declared in terms that they should be residents of the county, and then had provided the same means for electing them as are now provided, would the occurrence of these words, just as they now occur, have implied any intention on the part of the legislature to require a residence in the district as well as in the county? I think not; and if not then, then not now; because it is one of the qualifications of every officer, prescribed by general statute, that he must be an inhabitant of the district, county, town, &c., within which the duties of his office are required to be discharged. R. S., ch. 14, sec. 2, subd. 4. With this general qualification as to residence, which existed at the time the act was passed, and applied at once to the officers elected under it, it appears to me that we are not authorized to infer from the words in question an intention to impose still another qualification of the same kind, namely, residence in the district; and that we must

look to the duties to be performed to determine whether a supervisor must reside in a particular district, or only in the county.

The election by assembly districts was adopted by the legislature as a just and convenient method of making choice of these officers; but a supervisor elected by a district is no less a county officer than one elected by the voters of the county at large in counties where such a supervisor is to be chosen. Looking, then, to the duties to be performed, we find that they are not in any particular local, or such as must be performed within certain districts or localities of the county. Every supervisor is emphatically a county officer. Every act which he is required to perform is an act for the county. As an individual officer he has no authority, and can exercise none of the functions of an officer within the district for which he was elected, or within any other. All the power is vested in the board of which he is a member, styled the county board. This board is declared to be a body corporate and politic, and the same, or a quorum, when regularly convened, must discharge every official duty and perform every official act. What reason then is there for saying that a member of this board, or person chosen to continue the succession of the body corporate, should reside in a particular district, or in that for which he was elected? It is said that it is a representative office, and that to represent his constituents the supervisor must reside in the same district with them. I have already endeavored to show that the supervisor represents not his district in particular, but the county at large. But suppose that he represents the district: is it necessary for that purpose that he should reside in it? Is it not competent for the legislature, in the case of offices which they have the power to create, to provide that in elections by part only of the voters of a county, they may elect a candidate from the qualified electors of the county at large? It is well known that in the English House of Commons very

many members have constantly been returned for shires and boroughs in which they never resided. And in our own Congress there is no uniformity in the modes of election in the different states. In some states the representatives are chosen by a general ticket for the whole state; in others they are chosen in districts composed of a population sufficient to elect two or three representatives; and in others the districts are sometimes single, and sometimes united in the choice. In some states the candidate must have a majority of all the votes to entitle him to be deemed elected; in others (as it is in England) it is sufficient if he has a plurality of votes. In some of the states the choice of the voters is declared *viva voce* (as it is in England); in others, it is by ballot. 2 Story on Const., § 826. Had the legislature provided, as it might, for elections by general ticket for the whole county, no question as to the residence of any supervisor in any particular place in the county could have arisen. The duties of the board remaining the same, it hardly seems that the place of residence of any member of it is more material to be considered now.

It is also said that the idea of residence in the district is confirmed by the provision that the governor, in filling a vacancy, must appoint some suitable elector of the proper district. There may be, and I think there are, very good reasons why the governor, in making appointments, should be thus restricted, and yet not the electors. The governor being absent and unacquainted with the peculiar interests to be represented, might not be entrusted to select a person not a resident of the district, whilst the same power might be safely given to the resident electors themselves. It seems to me that the limitation upon the power of the governor, inserted, as it were, *ex industria*, rather tends to show that the voters may, if they choose, select a supervisor from among the qualified electors of the county at large.

Again, it is said that the duties of a supervisor are local

when the board of which he is a member is engaged in the equalization of the value of the real property in the county. When it can be demonstrated that the supervisor, to know the average or comparative value of the real estate in a town or district, must reside in such town or district, then the weight of this objection will be conceded; but not till then. Something must be conceded to the intelligence, personal honor and official integrity of the officer, as well as to the particular place in which he chances to reside.

For these reasons, I am of opinion that the office is not local, or strictly representative as to the election districts, but those are divisions for convenience merely in providing for the continuance of the body corporate of which Mr. Walsh is a member; and consequently that it is immaterial to his tenure that under the new apportionment the district for which he was elected has been divided and lost. He holds to the end of the term for which he was chosen, as a supervisor elected for an even numbered district; whilst at the annual elections coming after the new apportionment, supervisors for the odd and even numbered districts respectively are to be elected each alternate year, according to the districts as they exist under such apportionment, and as provided in chapter 75, Laws of 1865. If, under the new apportionment, more districts are created in any county, then elections are to be held in such additional districts according to their number; and if also it should become necessary to elect a supervisor at large, where none before had been elected, then an election for such supervisor must be had.

Under this view of the law harmony prevails, and the system established by the legislature for the election of members of the county board, the repeal of which was clearly not intended, remains in force. Any other view leads to such unspeakable confusion, that I should feel obliged to hold, as was intimated in the letter of advice of the late attorney general

addressed to these respondents, that the new apportionment act worked a repeal of the act regulating the election of supervisors, and that no election can be had in the new districts without further legislation.   If, without any such intention on the part of the legislature, a statute may be repealed or a public officer ousted by the incidental operation of a subsequent statute upon another subject, in my judgment it can only be in those cases when it becomes impossible to give effect to the precedent statute.

But suppose I am wrong in what I have said—and I am not very positive,—and that the statute requires the supervisor to reside in the district at the time of his election, it does not then follow that the subsequent division of the district ousts him from office.   The other clause of subdivision 4 of sec. 2, ch. 14, R. S., above cited, provides that every office shall become vacant on the incumbent's ceasing to be an inhabitant of the district, county, town &c., for which he shall have been elected, *if such office shall be local.*   I have shown, I think, that the office of supervisor is not local as to the district for which he is elected ; and if not, his subsequent removal from the district to another part of the same county, does not vacate his office.   If his removal does not terminate his right to the office, it seems clear that the division of the district by act of the legislature, without intent to oust him, ought not to have that effect.   I think it does not.

For these reasons, I am of opinion that the motion to quash should be overruled.

COLE, J.   It is very apparent from the legislation upon the subject, that the legislature intended to create or provide for county boards of supervisors, the members of which should hold their office for two years, and one half of whom should be elected each alternate year.   This is clearly manifest from the law of 1865.   And I am inclined to the opinion that the per-

son to be elected must be a resident of the district in order to be eligible. This is the general rule which obtains under our popular system of government; and I do not think the legislature intended to depart from it in the case of a supervisor of the county board.

But still, though this were so, I do not think it necessarily follows, under the facts set up in the relation, that Walsh was legislated out of office in consequence of the change of his district by the apportionment law of 1866. I do not think his duties are local in such a sense that he would cease to be a supervisor when no longer an inhabitant of the district as changed by the legislature.

*By the Court.*—Motion overruled.

DOWNER, J., dissents.