A. HENRY HEMPE, Corporation Counsel, Rock County
You have requested my opinion whether a vacancy is created under sec.17.03 (4), Stats., where a county board supervisor, following his election and qualification and during the term for which he was elected, moves to a different supervisory district within the same county.
I am of the opinion that there is no vacancy, and that the supervisor continues in office until his successor is *Page 56 
elected and qualifies, barring other subsequent event such as resignation, death, or removal for cause.
Section 17.03, Stats., provides in part:
"17.03 Vacancies, how caused. Any public office, including offices of counties, cities, villages, towns and school districts, however organized, shall become or be deemed vacant upon the happening of any of the following events:
"(1) The death of the incumbent.
"(2) His resignation.
"(3) His removal.
"(4) His ceasing to be an inhabitant of this state; or if the office is local, his ceasing to be an inhabitant of the district, county, city, village, town ward or school district for which he was elected or withinwhich the duties of his office are required to be discharged; and in the case of a school district officer, and in addition to the foregoing, his being and remaining absent from the district for a period exceeding 60 days.
"* * *." [Emphasis added.]
Note that sec. 17.03 (4), Stats., uses the phrase "for which he was elected" rather than "from which he was elected."
Prior to 1965, there was a question whether supervisors were county officers. They were elected from each ward in a city and from each village. The town chairman from each town served as supervisor by virtue of his town office. Sec. 59.03 (2) (a), (b), (c), (d), Stats., 1963. They were primarily regarded as officers and representatives of the respective municipal unit from which elected. In 27 OAG 704 (1938), it was stated that removal of a supervisor from the ward from which he was elected vacates his office but, unless the vacancy was filled, he could continue to act on the county board as a de facto supervisor from such ward.
In response to the "one man, one vote" rulings of the United States and Wisconsin Supreme Courts, the legislature *Page 57 
changed the entire method of selecting supervisors and expressly made them county officers. Ch. 20, Laws of 1965. While they are elected from supervisory districts, to give representation to the people residing therein, their duties are not confined to the boundaries of the district. Sec. 59.03 (b), Stats. Section 59.03 (2) (d), Stats., provides that they are county officers, elected for a two-year term, and serve until their successors are duly elected and qualified.
Section 59.03 (2) (d), Stats., provides that a candidate must be a qualified elector and resident of his supervisory district, and sec. 59.03
(2) (e), Stats., provides that in case of vacancy the person to be appointed must be a qualified elector and resident of the supervisory district. In Cross v. Helb (1970), 46 Wis.2d 356, 174 N.W.2d 737, the Supreme Court held that a resident who would be 21 years of age on election day would be qualified to seek the office.
The legislature intended that at least at the time of election or appointment the supervisor be a resident of the supervisory district. The legislature did not expressly or impliedly provide, however, that ceasing to be a resident of the supervisory district after election or appointment would vacate the office so that an appointment could be made. In creating the office, the legislature provided that vacancies caused by "death, resignation or removal from office" could be filled by appointment by the county board chairman with the approval of the county board. See sec. 59.03 (2) (e), Stats.
This is a local office and in the usual case a supervisor who ceased to be a resident of the district from which he was elected would resign so that the county board chairman could appoint a person who resided in the district, on the theory that such person would be more representative of the residents of such district and hence more responsive to their needs.
As a supervisor, while elected "from" a district, he is elected as an officer of and "for" the county, and his duties are countywide and not limited to the boundaries of his district. *Page 58 
Since he has not ceased to be an inhabitant of the county "for which he was elected or within which the duties of his office are required to be discharged," he can continue to serve until his successor is elected and qualified. See sec. 17.03 (4), Stats.
In State ex rel. Witkowski v. Gora (1928), 195 Wis. 515, 218 N.W. 837, the court applied the above reasoning to sec. 17.03 (4), Stats., in holding that the office of a member of a school board, elected from a ward, did not vacate his office when he moved to another ward in the same district, as he still resided in the district "for" which he was elected and within which the duties of his office were required to be discharged. At page 519 the court stated:
"* * * The legislature when it uses the language in sec. 40.46, `the members of the district board shall be chosen one from each ward,' and when it uses the language in paragraph (4) of sec. 17.03, `or if the office is local, his ceasing to be an inhabitant of the district, county, city, village, town, ward or school district for which he was elected,' makes a clear differentiation between the words `from' and `for.' This indicates that the legislature was fully aware of the ordinary and customary meaning of these words as used in common parlance. In any event, if the law-making body had intended a different meaning, its intention could readily and easily have been expressed. It thus becomes clear to our mind that the office of member of the district board becomes vacant if the member ceases to be an inhabitant of thedistrict, and not of the ward."
The legislature did not change sec. 17.03 (4), Stats., subsequent to the Gora decision, and did not especially provide for special treatment of the office of county supervisor where the incumbent moves from the district from which he was elected during his term.
The rationale of the Gora decision is therefore controlling.
I am aware that the Milwaukee Sentinel of December 15, 1970, reports that the supervisor in question intends to re-sign effective February 1, 1971. The board can take assurance, however, that he can continue to serve until that time.
RWW:RJV *Page 59