FRED A. RISSER, President State Senate
You request advice as to the date new legislative district lines as ordered by the three judge federal court become effective. You are particularly concerned with holdover senators in cases where district lines have been altered by the addition and deletion of territory. Your specific questions and my answers follow:
 1. Are the electors of the old district or the electors of the new district required to sign petitions to recall a holdover senator?
Answer: Electors of the new district.
 2. Are the electors of the old district or those of the new district entitled to vote in a special election to fill a vacancy in the office of a holdover senator?
Answer: Only electors of the new district.
 3. Is a holdover senator entitled to reimbursement for travel and mailings within the boundaries of the new district?
 The answer is yes, but only to the extent provided by statute and senate rules. See sec. 11.33, Stats.
Whether old legislative districts have any vitality depends upon the purpose being inquired into. By reason of the order of the federal district court, the old districts cannot be utilized for purposes of nomination and election after June 17, 1982. For purposes of nomination and election, the new legislative district lines became effective that date. *Page 158 
 I. The Wisconsin Constitution Requires The Legislature To "apportion and district anew the members of the senate and assembly" And The Federal District Court Did Reapportion Members As Well As Districts.
A. Constitutional provisions.
The recent case of The Wisconsin State AFL-CIO, et al v.Elections Board, et al, No. 82-C-0113 (E.D. Wis. 1982), and other reapportionment cases talk in terms of reapportionment of districts. The state constitutional provision places a duty on the Legislature to: "apportion and district anew the members of the senate and assembly . . . ." Wis. Const. art. IV, § 3. Wisconsin Constitution art. IV, § 4, requires that "members of the assembly shall be chosen biennially, by single districts . . . by the qualified electors of the several districts . . . ." Wisconsin Constitution art. IV, § 5, requires:
 [S]enators shall be elected by single districts . . . . The senate districts shall be numbered in the regular series, and the senators shall be chosen alternately from the odd and even numbered districts. The senators elected or holding over at the time of the adoption of this amendment shall continue in office till their successors are duly elected and qualified: and after the adoption of this amendment all senators shall be chosen for the term of four years.
Wisconsin Constitution art. IV, § 6, provides:
 No person shall be eligible to the legislature who shall not have resided one year within the state, and be a qualified elector in the district which he may be chosen to represent.
B. Power of the court in reapportionment cases in general.
After the 1980 federal census, the Wisconsin Legislature failed to timely reapportion its "members" or districts from which they were to be next elected. In other cases, as set forth in 25 Am.Jur. 2d Elections § 37, it has been held that:
 [W]here a state's legislative apportionment scheme has been found to be unconstitutional, and the state legislature, although afforded adequate opportunity to do so, has failed to enact a constitutionally acceptable apportionment scheme, the federal court may enjoin the holding of any further elections *Page 159 
under the invalid apportionment act. It may order the legislature to reapportion itself on a constitutional basis within a specified time, and if the legislature fails to reapportion in accordance with the court order, the court may then proceed to reapportion the legislature pursuant to a plan devised by the court. At least two federal courts have declared vacant the offices of legislators elected under an invalid apportionment scheme, and ordered the governor to call a special election to be held at large to fill such vacancies . . . . [Citing Reynolds v. State Election Board, 233 F. Supp. 323 (W.D. Okla. 1964).]
 . . . Where an election is imminent and the state's election machinery is already in progress, a court may properly withhold the granting of immediately effective relief from an existing apportionment scheme that has been found to be invalid. In such circumstances District Courts, after having authorized the holding of regular legislative elections under the invalid apportionment system, have limited the time within which the legislators so elected may serve, have limited the legislature to enacting only such legislation as is essential to carrying on its activities until a constitutionally valid apportionment scheme has been enacted, and have ordered that the vote of each legislature elected under an invalid apportionment scheme be weighted in a specified proportion.
In Sixty-Seventh Minnesota State Senate v. Beens, 406 U.S. 187
(1972), it was held that a court could not drastically reduce the number of representatives and senators, but would have had power to change the number of representatives in a minor degree.
 C. The federal court decision did not vacate offices held by incumbent senators so as to require holdover senators to stand election in their altered districts.
The Eastern District Court for Wisconsin did not choose to change the number of assemblymen or senators and did not act to vacate offices held by incumbents. It recognized that half the senators had more than two years remaining on terms for which they were elected. In its decision and amended order of June 17, 1982, the court renumbered senate districts and changed the boundaries of the district served by Senator Krueger. Thus, it appears to have given tacit consent to senators having two years remaining on their terms *Page 160 to serve in the newly created districts without the necessity of running in the Fall elections in 1982. The court in effect reapportioned members as well as districts and concluded that all of the citizens in the various assembly and senate districts would be represented under the court promulgated plan, even though there would not be an immediate vote for each senator. See
June 17, 1982 opinion at 4, 5.
 II. From And After June 17, 1982, The New Districts Are To Be Utilized For All Elections For State Senator, Including Those Involving Recall or Special Election To Fill A Vacancy.
 A. Holdover senators are responsible to the inhabitants of the new district.
The three judge court made it very clear that it tried to keep the boundaries of even numbered senatorial districts, in which elections were not scheduled in 1982, as unaltered as possible while at the same time equalizing population. In reapportioning "members" as well as "districts," and in permitting senators having two years left on the term for which they were elected to continue to serve in newly created districts without standing for election in 1982, the court recognized the proposition that such senators are responsible to the inhabitants of the district towhich their numbers correspond, that is the new district, and not to the inhabitants of the district from which they were elected.
B. The effective date of new district lines.
The February 22, 1982 order held that "the apportionment plan enacted by the Wisconsin Legislature in 1972 is unconstitutional . . ." and enjoined defendants from utilizing such plan in the "nomination or election of members of the state Legislature" from such districts. The injunction was dissolved by the June 9, 1982, order, but the court ordered: "1. The attached judicial plan of reapportionment be effective for the 1982 legislative elections and thereafter until such time as a valid constitutional redistricting plan is enacted into law." The June 17, 1982, decision and amended order made changes in the numbering of districts and finalized their physical forms. *Page 161 
 C. Recall elections or elections to fill vacancies must be based on the new district lines.
A special election to fill a vacancy in the office of a member of the state Legislature is an election. Secs. 5.02(4), 8.50,17.19(1), Stats. Recall involves the election process. Wis. Const. art. XIII, § 12; sec. 9.10, Stats. In my opinion neither recall elections nor elections to fill a vacancy can be based on an apportionment plan which has been found unconstitutional.
In regard to recall petitions, the state constitution provides that "[s]uch petition shall be signed by electors . . . in the . . . district from which such officer is to be recalled." It does not require signatures by electors in the district from which the officer was elected although the districts would in the usual event be identical. Here, the number of senatorial districts was not changed and as subsequently renumbered, each senator was, in effect, reapportioned to the newly created district by number. As far as I have been able to determine, senators serving even numbered districts live within the boundaries of the new districts and no vacancy would result by reason of sec. 17.03(4), Stats. In my opinion the reference to the December 15, 1953, Opinion of the Wisconsin Attorney General by the three judge panel, in its June 17, 1982, decision is somewhat misplaced and is not an endorsement of the proposition expounded in such opinion that only electors from the olddistrict vote in an election to fill a vacancy. See 39 Op. Att'y Gen. 360 (1950), 42 Op. Att'y Gen. 343 (1953). Also see
discussion by H. Rupert Theobold in 1970 Wisconsin Blue Book at 234.
 D. No vacancy is created where a senator in an odd numbered district presently does not reside within boundaries of the new district.
One or more senators in odd numbered districts do not reside within the boundaries of the new district bearing the number similar to that of the district from which such senators were elected. No vacancy would result by reason of sec. 17.03(4), Stats., since the senator remains an inhabitant of the "district from which he or she is elected." However, such a person would have to move into the new boundaries and qualify as an elector to be elected to represent the newly created district. Wis. Const. art. IV, § 6. *Page 162 
III. Mass Mailings And In-District Travel.
You advise that senate policy provides for mass mailings as well as reimbursement for"in-district travel." Section 11.33, Stats., prohibits the use of public funds by elected state officials for mass mailings between the period beginning with the first day for the circulation of nomination papers until after the date of the election.
It is my opinion that from and after June 17, 1982, each holdover senator or incumbent in a district in which an election is scheduled in the Fall of 1982, represents the newly created district which bears a number similar to that from which he or she was originally elected and, subject to senate rules and sec.11.33, Stats., may make mass mailings and may qualify for "in-district travel" when mailings are made to persons, or miles are traveled, within the boundaries of the new district.
CONCLUSION
It is my opinion that, for purposes of nominations, regular, recall and special elections, mass mailings and in-district travel, the effective date of the new district lines is June 17, 1982, the date of the court order. This effective date applies, in my opinion, both to holdover senators and to incumbents in those districts where elections are scheduled for the Fall of 1982.
BCL:RJV