THOMAS A. LOFTUS, Chairperson Assembly Committee on Organization
Pursuant to section 165.015(1), Stats., the Assembly Committee on Organization requests my opinion as to the effect of 1983 Wisconsin Act 29 on individual legislators currently holding office. You are especially concerned with those legislative districts which have been renumbered or whose boundaries have been changed by Act 29. In Wisconsin State AFL-CIO v. ElectionsBd., 543 F. Supp. 630, 639 (D.C. 1982), the order of the court provided: "The appended judicial plan of reapportionment be effective for the 1982 legislative elections and thereafter until such time as a valid constitutional redistricting plan is enacted into law.
The judicial plan was printed in the 1981-82 Wisconsin statutes as chapter 4 beginning at section 4.004 together with chapter 4 as created by chapter 304, Laws of 1971, even though the latter was held unconstitutional in AFL-CIO v. Elections Bd. The legislative elections in the November 1982 general election were held in accordance with the judicially ordered plan. In 71 Op. Att'y Gen. 157 (1982), this office stated that the effective date of the new district lines for purposes of nominations and regular, recall and special elections was the date of the court order, June 17, 1982. This office also concluded that holdover senators in districts whose boundaries were altered were responsible to the inhabitants of the district to which their numbers corresponded under the new districting plan and not to the inhabitants of those portions of their former district which were not included within the altered district. *Page 173 
Wisconsin Constitution article IV, section 3 requires that "[a]t their first session after each enumeration made by the authority of the United States, the legislature shall apportionand district anew the members of the senate and assembly, according to the number of inhabitants . . . ." The Legislature responded to the federal court order issued in Wisconsin StateAFL-CIO by enacting the reapportionment plan set forth in 1983 Wisconsin Act 29. A reapportionment plan is presumed constitutional and its unconstitutionality must be established beyond question. State ex rel. Broughton v. Zimmerman,261 Wis. 398, 52 N.W.2d 903 (1952). This opinion presumes that the reapportionment plan meets the one-person one-vote requirements under the federal constitution and the "contiguous territory . . . in as compact form as practicable" requirements of Wisconsin Constitution article IV, sections 4 and 5.
1983 Wisconsin Act 29 does not specifically set forth the relationship of the new districts to incumbent legislators and especially as to assemblypersons. The Act utilizes different numbers for assembly districts than those assigned by the federal court. The Act does not include a cross-reference by name, map, index or number as between each incumbent assemblyperson, the judicially numbered district and the number assigned the district under Act 29.
1983 Wisconsin Act 29 was published on July 19, 1983, and by reason of section 991.11 all of its provisions, with exceptions,* became effective July 20, 1983.
Section 14 of Act 29 provides that "[s]ections 8.15(9) and8.20(10) of the statutes, as affected by this act, first apply to the regular 1984 September primary and November general elections for representative in congress, and for members of the senate and assembly."
At first blush one might argue that since the Legislature provided that sections 8.15(9) and 8.20(10) should first apply to the 1984 September primary and November general elections, the newly legislative-created districts have no relationship to incumbents. I am of the opinion, however, that the Legislature did, within constitutional terms, "apportion and district anewthe members of the senate and *Page 174 
assembly," and that it intended that incumbents elected from judicially ordered districts immediately serve the district from which they were elected as altered with respect to boundaries and as renumbered in the case of assembly districts. This conclusion is in part based on legislative intent set forth in section4.001(4) concerning the urgency to fulfill the constitutional duty with respect to apportionment which includes a statement that the Legislature had improved upon the court plan. It is primarily based, however, on the fact that section 2 of Act 29 expressly repealed all of chapter 4 which set forth the judicially created districts and those created by chapter 304, Laws of 1971. As of July 20, 1983, the only viable districts were those created by 1983 Wisconsin Act 29. Further, the Act made it clear that the former districts were not to be utilized for any election. The Act revised section 4.004 to provide:
 On or after the effective date of this act (1983), any special election to the legislature called to fill a vacancy for the balance of an unexpired term, any election to recall a member of the legislature, and any regular election to the legislature, shall be from the districts as described in ss. 4.009 and 4.01
to 4.99.
Section 14 of 1983 Wisconsin Act 29 refers only to the initial applicability of amended sections 8.15(9) and 8.20(10), not to the initial applicability of the entire Act. Section 14 indicates that the state election board is not required to provide candidates for state office with copies of maps showing the boundaries of the reapportioned districts until the 1984 primary and general elections. This does not mean that the new districts are not effective before 1984, only that the board need not supply maps until that time.
My conclusion that the plan became immediately effective is supported by federal cases. See Federation for AmericanImmigration Reform v. Klutznick, 486 F. Supp. 564, app. dis'd,447 U.S. 916 (D.C. D.C. 1980), and Mach v. East Baton RougeParish School Bd., 533 F. Supp. 556 (D.C. La. 1980). In addition, there are strong policy considerations in favor of precluding delays in implementing reapportionment plans. See Petuskey v.Rampton, 243 F. Supp. 365 (D.C. Utah 1975).
Finally section 991.11 provides that every act "which does not expressly prescribe the time when it takes effect shall take effect on *Page 175 
the day after its date of publication." Therefore, the Act became effective on July 20, 1983.
No real importance can be given to the fact that the Assembly changed the numbers of assembly districts from those utilized under the court plan. It did not result from any legislative intent to reassign a member (an incumbent legislator) to a district other than that from which he or she was elected. It was a reassignment of a number only, to the district which had altered boundaries. The district remained the district from which he or she was elected as altered. The total number of assembly districts was neither increased nor decreased. I am advised that the change was made to return to the former formula and procedure of the Legislature under which the senate district number multiplied by three would equal the number of the largest numbered assembly district contained within the senate district.
Your specific questions and my answers follow:
 1. Does a legislator continue to represent, during the remainder of his or her term, all those persons within the election district from which he or she was elected?
 2. Does a legislator, who currently resides in a district affected by Act 29, represent those persons within the district who were newly-placed there by Act 29?
The answer to your first question is no and the answer to your second question is yes. However, senators and assemblypersons are public officers and state constitutional officers and, in a broad sense, are responsible to all inhabitants of Wisconsin. Wisconsin Constitution article IV, sections 4 and 5; State v. Eaton,133 P.2d 588, 591, 592 (Mont. 1943). An assemblyperson is elected from a district by the qualified electors therein, must be a resident and qualified elector "in the district he may be chosen to represent" and has special responsibility to such district and all of the inhabitants therein. Wisconsin Constitution article IV, sections 4 and 6. Also see State ex rel. Reynolds v.Zimmerman, 22 Wis.2d 544, 564, 565, 126 N.W.2d 551 (1964). Section 4.004 as created by Act 29 makes the assemblyperson solely subject to the electors of the altered district as far as recall is concerned. In City of Philadelphia v. Klutznick,503 F. Supp. 663, 672 (D.C. Pa. 1980), it was stated: "A legislative representative suffers no cognizable injury, in a due process sense or otherwise, when *Page 176 
the boundaries of his [or her] district are adjusted by reapportionment."
 3. Do the numbers assigned to [assembly] legislative districts have any relevance in determining who is represented by a specific legislator?
For reasons stated above the answer is no. A legislator continues to represent the district from which he or she was elected, "chosen to represent," as altered with respect to boundaries and as renumbered.
 4. May legislators currently residing in a legislative district change their residency to another location within that district, as established by Act 29, during the remainder of the term to which elected? Must the location of the new residence remain within the district from which the legislator was last elected, or may it be located at any place within the district as revised by Act 29?
The answer to the first part of the question is yes. The answer to the second part of your question is that such legislator can move to any portion of the district as revised. It is the same district but has merely had its boundaries altered and a different number assigned. If the residence of the legislator were not included within boundaries of the new district, the statement in 71 Op. Att'y Gen. 157, 161 (1982) would apply:
 One or more senators in odd numbered districts do not reside within the boundaries of the new district bearing the number similar to that of the district from which such senators were elected. No vacancy would result by reason of sec. 17.03(4), Stats., since the senator remains an inhabitant of the "district from which he or she is elected." However, such a person would have to move into the new boundaries and qualify as an elector to be elected to represent the newly created district. Wis. Const. art. IV, § 6.
A legislator is not required to move into his or her revised district immediately, if the effect of the new district lines is to exclude such person from the revised district. A legislator is required to move into the revised district only if he or she decides to run for representative in that district in the next general election.
 5. Are there any restrictions which legislators should observe regarding the use of public funds for mailings to constituents and reimbursable travel within their legislative districts? *Page 177 
The answer is yes. Section 11.33, as amended by 1983 Wisconsin Act 27, prohibits the use of public funds by elected state officials for mass mailings between the period beginning with the first day for the circulation of nomination papers until after the date of the election. The limitation does not apply "to answers to communications of constituents." A legislator cannot expend public funds for a purely private purpose. However, such officer can expend funds which have been appropriated for his or her use for mailings to constituents within his or her district and to persons located outside such district and for travel both within and without such district when such mailings or travel are connected with the officer's representation of the district and the inhabitants therein, subject to rules of the Assembly enacted under Wisconsin Constitution article IV, section 8, or applicable statute. See section 13.123 as to postage and clerical assistance allowance and reimbursement for travel expense.
You have furnished me with copies of "Assembly District Mileage Reimbursement Policy" for payment from funds appropriated under section 20.765(1)(a) adopted by the Committee on Assembly Organization on August 3, 1983, which purports to limit reimbursement for mileage costs to travel within "their respective districts or adjoining counties," which attempts to define which meetings constitute official legislative business, and which prohibits reimbursement for travel related to attending political party meetings, appearances in behalf of other candidates or for other "political purposes" as defined in section 11.01(16). You have also furnished me with a copy of the minutes of the Committee's August 3, 1983, meeting which indicates that the Committee has attempted, by resolution, to establish a limit of "one district-wide mailing per session (equal to 15,000 copies at current bulk rates) outside the Assembly office account." The Committee also enacted the following resolution: "For the purpose of the Assembly district mileage reimbursement policy and office account policy, Assembly districts as established by 1983 Wisconsin Act 29 shall be considered the `district' effective July 20, 1983."
I find nothing in the 1983 Assembly Rules, adopted June 2, 1983, which would delegate to the Committee on Assembly Organization power to limit the number of pieces mailed or to limit mailings to the representative's district or to limit travel to the representative's district or adjoining counties. 1983 Assembly Rule 23 is only concerned *Page 178 
with power of such Committee to approve expenditures from the "contingent fund" as required by section 13.14(1). Section13.14(1), as amended by section 2202 of 1983 Wisconsin Act 27, which changed the cross reference from section 20.765(1)(b) to20.765(1)(c), provides that: "Expenditures from the legislative contingent fund, under s. 20.765(1)(c) shall be made only when authorized by majority vote of the . . . organization committee in the respective house . . . ." Act 27 provides for only a two thousand dollar appropriation for contingent expenses in each of the two years. I do not view section 13.14(1) as a basis for the Committee on Assembly Organization having power over expenses set forth in section 13.14(3), which provides:
 TRAVEL; LEGISLATIVE PERSONNEL. The actual and necessary expenses of legislative policy research personnel, assistants to legislators and research staff assigned to legislative committees and party caucuses incident to attending meetings outside the capital shall be reimbursed from the appropriation under s. 20.765(1)(a).
In addition, section 13.14(1) is not a sufficient basis for the Committee on Assembly Organization to assert control over expenditures from section 20.765(1)(a), as created by Act 27, which provides a sum sufficient fund for "General program operations-assembly" estimated at $8,661,200 for 1983-84 and $8,714,700 for 1984-85. The interim postage and clerical assistance allowance for each calendar month during which the Legislature is in actual session three days or less is limited to $25 per month for each representative. Sec. 13.123(2), Stats. Subsection 2 does not confer power of prior approval on the Committee on Organization with respect to mailing within the representative's district or with respect to processing claims for payment. In my opinion the Committee probably did not have power to limit mailings of representatives as to number or as to territory.
The Committee on Assembly Organization does have power under section 13.123(3)(a) and (b) relative to approval of attendance
of an assemblyperson at certain out-of-state meetings as a prerequisite to reimbursement for expenses from section20.765(1)(a). The speaker, rather than the committee, has power to approve attendance of meetings "within the state outside the state capitol." Sec. 13.123(3)(a), Stats. It is my opinion that the limits on reimbursement *Page 179 
for travel in the "Assembly District Mileage Reimbursement Policy" adopted by the Committee on Assembly Organization, except as they apply to out-of-state meetings, are of questionable validity and are not within powers authorized the Committee under section 13.123(3), or any statute or duly enacted assembly rule of which I am aware.
BCL:RJV
* Section 66.021(16), relating to annexations; section 66.022(6), relating to detachments and sections 8.15(9) and 8.20
(10) relating to duty of elections board to give candidates a copy of a map showing the boundaries of the district which the candidate seeks to represent.