WILLIAM A.J. DRENGLER, Corporation Counsel Marathon County
You have asked two questions that have been raised by the City of Wausau's annexation of an urban portion of the Town of Stettin. Previously, Wausau had acted under section 66.192, Stats., to combine the offices of city alderman and county supervisor, which the city could do because the aldermanic district boundaries were coterminous with the supervisory district boundaries.
The residence of the county supervisor who was representing the district that included the Town of Stettin is within the area that was recently annexed to the City of Wausau. If the county board alters the supervisory districts so that they remain coterminous with the city's new aldermanic districts, the supervisor will be residing outside the district that he has been representing. If the county board refuses to amend the supervisory districts, then one or more of the new aldermanic districts in the expanded city will no longer have boundaries coterminous with the unaltered supervisory districts.
You first ask: if the county alters the supervisory district boundaries so that they remain coterminous with the city's aldermanic districts, does the county supervisor who resides in the city's newly annexed area vacate his office because he would no longer be a resident of the district he had been representing?
In my opinion, the supervisor does not vacate his office under these circumstances. The supervisor vacates his office when he moves away from his district, but he does not vacate his office when the district moves away from him. *Page 11 
The statutes that determine whether a county supervisor has vacated his or her office with a change of residence are sections17.03 (4) and 59.125.
A previous opinion considered whether a supervisor vacated his or her office by moving to a residence outside the district but inside the county. My predecessor concluded that by such a move the supervisor vacated his office because, under section 59.125,[1]
he was no longer a resident of the district from which he was chosen. 74 Op. Att'y Gen. 160.
My conclusion is different in this case because here the district would be moving away from the supervisor who continues to reside in the same place as when he was elected. Since he is still a resident of the district from which he was chosen, he is eligible under section 59.125 to continue to hold the office of county supervisor.
In addition, because the supervisor would find his residence outside of his district due to a boundary change and because he would continue to reside in the county, he has not vacated his office under section 17.03, which as amended effective July 1, 1986, provides in part as follows:
 Except as otherwise provided, a public office is vacant when:
(4) The incumbent ceases to be a resident of:
(a) This state; or
 (b) If the office is legislative, the district from which elected; or
 (c) If the office is local, the county, city, village, town, district or area from which elected or within which the duties of the office are required to be discharged except as provided in ss. 60.30 (6), 119.08 (1)(c) and 120.05 (1)(d). *Page 12 
To paraphrase section 17.03 (4), a county supervisor vacates his office when he is no longer a resident of the district from which he was elected or the county within which his duties are required to be discharged.
When the supervisor's residence remains the same but the district's boundaries have changed, he still resides in the district from which he was elected. A situation like this case was discussed in 71 Op. Att'y Gen. 157, 161 (1982), where, as a result of reapportionment, a state senator found himself residing outside the district he had been representing. My predecessor concluded that no vacancy would result by reason of section 17.03
(4) because the senator remained an inhabitant of the "district from which he or she is elected." Sec. 17.03 (4), Stats. (1981).
The key language in both sections 59.125 and 17.03 (4) is the phrase "from which." Those words appear in both statutes and should be applied the same way.[2] Because no vacancy occurred in the case of the state senator, so also no vacancy occurs in the case of the county supervisor who would find that because of a change in boundary lines he no longer resides in the district he had been representing. In both cases the elected official has remained in the district from which he or she was elected or chosen. In each case no vacancy is created by the change in district boundaries and the official continues to represent his or her old district until the expiration of the term. Because he remains a resident of the district from which he was elected, the Marathon County supervisor retains his eligibility under section 59.125 to hold the office of county supervisor and does not vacate his office under section 17.03 (4). As in the case of the state senator, however, the county supervisor would have to move his or her residence to be within the new boundaries to be elected to a new term in the old district. See 71 Op. Att'y Gen. at 161. *Page 13 
The alternative test in section 17.03 (4) for creating a vacancy in the office of county supervisor focuses on the county of residence rather than on the district. Although the supervisor is elected from a district, his or her duties are countywide and not limited to the boundaries of the district. See State ex rel.Gill, Att'y Gen'l v. The Supervisors of Milwaukee County,21 Wis. 449 [*443] (1867) and 60 Op. Att'y Gen. 55, 57-58 (1971). Whereas it was necessary to determine whether the supervisor remained an inhabitant of the district from which he or she was elected, the alternative test for a vacancy in the office depends upon whether the supervisor inhabits the county within which the duties of the office are required to be discharged. Gill, 21 Wis. at 453-54
[*447-48], and 60 Op. Att'y Gen. at 57-58. In the case you pose, the supervisor would satisfy this part of the section 17.03 (4) test because the supervisor continues to reside in the county within which the duties of his office are required to be discharged.
Therefore, if Marathon County alters the supervisory district boundaries so that they are coterminous with Wausau's new aldermanic boundaries, the supervisor does not vacate his office by reason of the change in boundaries; and he can continue to represent his numbered district until the end of the term.
In your second question you ask: "Does the `discretion' afforded a county board under 59.03 (3)(c) require alteration of supervisory district boundaries where said boundaries are coterminous with city aldermanic boundaries, or does 62.08 appear to provide an adequate means to enfranchise those who become new city residents through annexation procedures?"
In my opinion, the county board retains the discretion to decide whether to amend supervisory district boundaries even when those boundaries are coterminous with city aldermanic district boundaries. The city does not deprive the county board of that discretion by choosing to combine the offices of alderman and supervisor. The city extends representation to the new residents in the annexed area by creating new wards or by altering old wards to include the new area pursuant to sections 5.15 (2)(f)5.,62.08 (2) and 66.021 (7)(b).
Pursuant to section 59.03 (3)(c), a municipal annexation may serve as a basis for altering the boundaries of supervisory districts, *Page 14 
"in the discretion of the county board."[3] In that statute, the Legislature clearly expressed its intent that the power to alter the supervisory district boundaries between federal decennial censuses is vested in the county board. This approach is consistent with section 59.03 (3)(b), which gives the county board the authority to adopt the final supervisory district boundary plan after each federal decennial census. It is certainly logical to give the county board the authority to draw the boundaries for the county supervisors.
The city, by opting to combine the offices of alderman and supervisor where the boundaries for the aldermanic and supervisory districts are coterminous, does not deprive the county board of its authority to establish and alter the supervisory district boundaries. When a city annexes territory, it incorporates the new area into an existing ward or creates a new ward that will be placed in an aldermanic district. See secs.5.15 (2)(f)5., 62.08 (2) and 66.021 (7)(b), Stats. In this way the city extends representation to its new residents. However, in annexing the property, the city does not force the county board to amend the supervisory district boundaries.
Whether to alter the boundaries lies within the discretion of the county board.[4]
DJH:SWK
[1] Section 59.125 was amended effective July 1, 1986, so that it is no longer phrased the same as when its application was considered in 74 Op. Att'y Gen. 160 (1985). However, the changes that were made in the statute would not affect the conclusion reached in that opinion. The statute was amended in the following respects by 1985 Wisconsin Act 304, sec. 142:
 Eligibility for county office. No person is eligible to file nomination, papers as a candidate for, have his or her name placed on a ballot for election to, or hold a county elective office who is not [a resident](fn*) an elector of the county. No person is eligible to file nomination papers as a candidate for, have his or her name placed on a ballot for election to, or hold the office of county supervisor who is not [a resident](fn*) an elector of the supervisory district from which he or she is chosen. No person is eligible to hold the office of district attorney who is not licensed to practice law in this state.
(fn*) [EDITORS' NOTE: THE TEXT CONTAINED WITHIN THE BRACKETS WAS STRICKEN THROUGH IN THE ORIGINAL TEXT.]
[2] The argument that the "from which" phrase as applicable to county supervisors should be interpreted the same as the "from which" phrase applicable to state senators was strengthened by the recent change in section 17.03 (4). Prior to the change section 17.03 (4) provided that a local office was vacated if the official ceased "to be an inhabitant of the district, county, city, village, town, aldermanic district or school district for
which he or she was elected" (emphasis added). In 1985 Wisconsin Act 304, sec. 133, the statute was amended by substituting the word "from" for the word "for." As a result, both legislative and local offices are vacated when the official ceases to inhabit the applicable area "from which" he or she was elected.
[3] Section 59.03 (3)(c) provides:
 Changes during decade. After the enactment of a plan of supervisory districts under par. (b), a municipal incorporation, annexation, detachment or consolidation may serve as a basis for altering between federal decennial censuses the boundaries of supervisory districts, in the discretion of the county board. The number of supervisory districts in the county shall not be changed by any action under this paragraph. Any plan of county supervisory districts enacted under par. (b) may be amended under this paragraph but shall remain in effect as amended until superseded by another plan enacted by the county board under par. (b) and filed with the secretary of state.
[4] If the county does not alter the supervisory district, the city will have to amend its charter ordinance that combines the offices of alderman and supervisor because, in that portion of the city where the aldermanic and supervisory districts are no longer coterminous, the offices cannot be combined. See sec. 66. 192 (1)(b), Stats. *Page 15